And this time, we'll hear Killian v. United States. That's on submission. Yeah. Okay, so we'll take that on submission, and at this time, we'll hear United States v. Persaud. Thank you. Good morning. Good morning. May it please the Court. My name is Brad Henry. I represent Tarahumara Persaud. For purposes of oral argument, Ms. Persaud is seeking to have her case vacated and remanded to the District Court. Ms. Persaud entered a plea of guilty. She wants her plea back, Your Honor. So she now wants to go to trial? I believe that's my understanding, yes. Did she ask the District Court to take her plea back? She did not. Isn't that a problem? Yeah, well, it certainly changes the standard of review from harmless error to plain error, which makes her road a bit more difficult. And how is a substantial injustice going to be done if we don't give her her plea back? Your Honor, for Ms. Persaud, I think, look, the fact of the matter— She relocuted all the facts of the crime, the $700,000 that she stole from her employer. She acknowledged all the rights that she was giving up under Rule—pursuant to Rule 11. She didn't simply reuse the magic word guilty, the magic word guilty, right? Well, I think the issue here—that is all true, yes, to answer your question. She said guilty before she was sworn in. She wanted to plead guilty. But it is a curious colloquy, I agree. I would hope that the magistrate abandons this procedure. But the question here in my mind is, is there any doubt that she was pleading guilty in your mind? Is this—or is this a kind of a technicality, but a technicality that you think really matters and so therefore it's worthy of the relief that she now seeks? It is a bit of a technicality. I think this Court in Pate laid out a couple of things. One, strict adherence to Rule 11 is required. However, the script by which a judge goes about going through the Rule 11 colloquy is not so set in stone. However, when you read Rule 11, the very first thing it says is before a judge may accept a plea of guilty, it must do a series of things. One, place the defendant under oath, go through the litany of issues by which that defendant must understand they are giving up constitutional rights, maximums and minimums, and all of the things that are commensurate with a plea. The question here is really, did the judge put the cart before the horse? It is number one, a timing issue, and secondarily, at a more baseline level, a voluntariness issue. Did this defendant understand the rights she was giving up before she said the magic words, I plead guilty? But she did. She reconfirmed after she read all of her rights. So if when she heard her rights, she thought, oh my goodness, if I'm going to get a lawyer and I can confront my witnesses, why on earth am I pleading guilty? She had that opportunity right then and there, but she didn't take it. That is true. As a practical matter, however, I will say that in the heat of those types of hearings, defendants are often faced with a number of outside forces. One, they don't know whether they can speak up or not. At those hearings, her attorney may have been . . . we don't know from the record, right? We can't see the video of the plea. Her attorney may have been whispering in her ear, do not say anything. Do not bring this up. Do not do it. We'll talk about it. There are a number of issues that may have happened. We just don't know in the record. We don't know because she never said anything to the district court how, if she had actually been asked to say guilty, how that would have altered her plea, do we? Her position clearly now is, had I . . . Now, buyer's remorse is not grounds for vacating a plea. That happens both in state and federal court at times. My question to you is, where in the record can we look at something where she says, well, had I known that I had to say the word guilty, I would not have pled guilty? It's not there. I'm not aware of any. On this record, what is it that we're supposed to do to give her relief when there's nothing in the record that supports her assertion that she's entitled to relief for which she identifies no harm? Well, the secondary issue, I mean, going to the standard, right, was there a violation of Rule 11, involuntariness, and then moving to, was that harmless or plain error? Look, I simply, I can't contest that there is nothing in the record where she says that I wanted my plea back until the appeal is filed. I . . . I understand that Pro Bono's in this case, and this is your . . . you've inherited this. Correct. Okay. Fair enough. I won't ask anything more. Okay. Unless the Court has any other questions, I think. Thank you. Thank you. We'll hear from you. Thank you, Mr. Henry. May it please the Court, my name is Jane Kim. I'm an assistant United States attorney in the Southern District of New York. I represent the United States of America on appeal, and I represented the government in the district court proceedings below. Is this normal procedure for this magistrate to not ask the defendant to plead guilty? Does seem kind of basic, doesn't it? Well, one thing I would point out is that after reviewing the rights that the defendant was giving up by pleading guilty, the magistrate judge did then ask the defendant, are you making your plea voluntarily and of your own free will and choice? Yeah, I get that. I get that. Isn't that sort of . . . if you look at this on analogy with the two-step Miranda cases, it becomes very difficult once you have said you've done it to listen to the statement of rights and then withdraw that. Most people are inhibited from taking contradictory positions in court before a judge. I mean, lawyers do it, but then that's the lawyer's job, but this looks as though it could be truly intimidating to stand up after the rights are read and said, well, everything I said before, you can forget about that because I want to go to trial. Your Honor, what I would say in response to that is not only did Judge Ellis, after explaining all the rights, ask the defendant if she was making her plea voluntarily, the judge also informed, advised the defendant that she could plead not guilty. And then again, after advising the defendant of her rights, the judge asked, did you commit the offense with which you have been charged and asked her to explain what she did. And so there were several stages during the course of the plea proceeding where the defendant could have said, you know, I do not want to proceed with this or I'm not pleading guilty at this time or I'd like to change my mind. And during the course of . . . Well, it's the same thing with the two-step Miranda thing. Once people have been told what their Miranda rights are, you could say, well, then they could assert it. But they don't because the natural tendency is once you have waived a right or once you have admitted something, it's really hard to stand up, especially in court, in front of a judge and say the opposite. Well, what I can say in response to that, Your Honor, is that I have, of course, not reviewed every plea transcript in the Southern District of New York, but I have reviewed some. And in the beginning of many of those plea proceedings, the district court or the magistrate judge will ask the defendant and defense counsel, what is the purpose of this proceeding? And the defense counsel will usually say something along the lines of the defendant plans to plead guilty to count one or count two. And so, you know, there are parallels between that and this particular case where the defendant said I plead guilty to count two from the start, and then was advised of her rights and was given several opportunities during the course of the plea proceeding to change her mind and or say that she didn't want to plead guilty. Yes, but your argument suggests that there's no problem with this upside-down way of proceeding. Well, the point here, Your Honor, is that the plea proceeding was in compliance with Rule 11 in the sense that Rule 11 provides that the defendant should be informed of her rights and that the defendant's guilty plea should be voluntary and that there should be a factual basis for the plea. And so, based on Rule 11, Magistrate Judge Ellis advised the defendant of all of her rights to have a factual basis for the plea and ensured that the defendant was not being threatened and was entering the guilty plea voluntarily. In addition, from the time that the defendant's plea proceeding occurred before Magistrate Judge Ellis and the time that the district court judge accepted the recommendation of Judge Ellis to accept the defendant's guilty plea, there was approximately one month. There was no mention from the defendant about wanting to withdraw the plea, about changing her mind, or having any sort of hesitancy. She actually hadn't pled guilty. Excuse me, Your Honor? Or saying that she actually hadn't pled guilty. Yes, Your Honor, that's correct. And we would also point out that from the time the district court judge accepted the guilty plea, approximately one year passed before the actual sentencing and a FATICO hearing took place. And during the course of that time, the defendant also did not indicate that she wanted to take her plea back or that she had not pled guilty, and she moved forward with the sentencing proceeding. Unless the panel has any other questions, the government rests on its brief. Did she get any advantage as a result of this plea agreement? Yes, Your Honor. I mean, the defendant was charged in a two-count indictment, and the plea agreement, pursuant to the plea agreement, the defendant pled to count two. Yeah, but that doesn't mean anything. Did she get any advantage in terms of the sentencing or the guidelines? Yes, Your Honor. So because the defendant did not proceed to trial, she received the three-point reduction for acceptance of responsibility. Thank you. We'll hear from Rebecca. Thank you both. Oh, I'm sorry, Mr. Henry. Unless the court has any questions, I'll say this is a situation I think the court and everyone here understands. This is a question of nowhere in Rule 11 does it say the court has to ask a defendant if they plead guilty, but it is known that you must ask the defendant whether they plead guilty or not, right? And so the script following here is common sense is really the question that must prevail here. And in terms of the way plea colloquies are handled in the Southern District and around the country, it makes a lot of sense in this situation. Even though she did the things she did and said the things she did, she was never confirmed. Do you want to plead guilty? And as Your Honors have pointed out, it is a tremendously difficult thing for a defendant, particularly Ms. Persaud, who the court does not know, is a very timid, sort of a frail lady who certainly wouldn't have spoken out of turn like that. It is very deferential. And so in terms of this, I think the arguments are clear, unless you have any other questions. As I understand it, there was a one-month gap between the plea proceeding before the magistrate and the acceptance of the guilty plea. That's correct. She could have moved to withdraw in that one month. She could have. You know, the idea between, for me being a defense attorney and doing what I do, the idea of Ms. Persaud moving to do that and asking her attorney to do it and it actually happening, I understand these are 2255 issues and what was said and not said behind closed doors. Her attorney did not do that on her behalf and proceeded through and did the Fatico hearing and the other hearings. The court is correct in that statement. Thank you. Thank you both. Thank you.